UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                :
                                        Plaintiff,    :
                                                      :           20 Crim. 496 (LGS)
                    -against-                         :
                                                      :           FACTUAL FINDINGS
CHRISTOPHER MORALES,                     :                ON ALLEGED
                                        Defendant,   :           VIOLATION OF
------------------------------------------------------------ X    SUPERVISED RELEASE

LORNA G. SCHOFIELD, District Judge:

        In the Amended Violation of Supervised Release Report and Petition, dated February 28,

2022, the Probation Department alleges eight instances when Defendant Christopher Morales

violated the conditions of his supervised release.  Defendant contests Specifications 1, 2, 3 and 8,

which relate to an altercation between him and his wife, Ms. Kathy Martinez, on August 23,

2021 (the "Incident").  The parties declined a *Fatico* hearing on the disputed specifications and

asked the Court to make factual findings based on the parties' submissions.

        Defendant has represented that on the day of sentencing, he intends to admit

Specifications 4 and 5, and the Government has represented that it will move to dismiss

Specifications 6 and 7.  For the reasons below, the Court finds that Defendant violated

Specifications 3 and 8, finds that he did not violate Specifications 1 and 2, and reserves ruling on

Specifications 4, 5, 6, and 7.

## I.    BACKGROUND

        The following factual summary is based on the evidence that the parties submitted in

connection with the disputed Specifications or are matters of which the Court is entitled to take

judicial notice.

        After pleading pleaded guilty to Conspiracy to Distribute Heroin, Marijuana and at least

28 Grams of Cocaine Base, in violation of 21 U.S.C. § 846, 841(b)(1)(B), Defendant was sentenced in the District Court of Vermont to eighty-four months of imprisonment, followed by four years of supervised release.

On December 7, 2018, Defendant commenced his term of supervised release in the Southern District of New York based on the location of his residence.  Jurisdiction of Defendant's supervised release was transferred from the District of Vermont to this court on September 18, 2020.

Defendant and Ms. Martinez were married in 2008 and have a son.  After Defendant served his term of imprisonment in this case, he and Ms. Martinez lived separately.  On August 23, 2021, Defendant traveled to Ms. Martinez's home.  Defendant and Ms. Martinez got into an argument which lead to the Incident.

After Defendant left her home, Ms. Martinez called 911.  On the recording of the 911 call, Ms. Martinez described the altercation stating that she and Defendant "got into an argument" and that he "grabbed [her] arm," "held [her] down" and "put his hand over [her] mouth" and "ripped [her] jewelry off."  She later clarified that he "pinned [her] down and put his hand over [her] mouth, hard."

A Nassau County Police Officer (the "Officer") responded to the scene and prepared a Domestic Incident Report (the "Incident Report"), which states that Defendant and Ms. Martinez got into a "verbal dispute," and that he "shove[d] her onto her bed, cover[ed] her mouth and nose with his hand, rip[ped] off and [broke] [her] bracelets and bit[] her on the arm, [and then] took [her] phone and left the residence."  The Incident Report further states that she "refus[ed] all medical attention on scene."

In the "Prior History" section of the Incident Report, Ms. Martinez answered "yes" to the

following three questions: (1) whether he has ever strangled or choked her, (2) if he is violent or constantly jealous of her and (3) whether the physical violence has increased in frequency or severity over the past six months.  The Officer who prepared the Incident Report attested that she read to Ms. Martinez each question in the Prior History section.

In a Supporting Deposition prepared on the date of the Incident, Ms. Martinez also stated that she and Defendant got into an argument because "I wanted him to leave.  At this point, Christopher grabbed me, shoved me on the bed, covered my mouth and nose with his hand. While covering my airways, Christopher bit me which caused bruising but no pain and ripped 2 bracelets off of my wrist causing them to break."  The Officer read aloud to Ms. Martinez the Supporting Deposition, which she and the Officer both signed.

The photographs that the Officer took on the date of the Incident (the "Photographs") depict a large bite mark on Ms. Martinez's shoulder, small bruises on other parts of her body and her two broken bracelets.  After the Incident, a Detective filed an investigative report, which repeats the substance of Ms. Martinez's above statements and includes that her phone, which Defendant took during the Incident, was "in the bedroom, and not on her person."

Ms. Martinez's affirmation, filed in opposition to Specifications 1, 2, 3 and 8 (the "Affirmation") states that "other than the fight in August 2021 and on one other occasion, we do not get into physical arguments."  The Affirmation also explains that, because Defendant's conditions of supervised release did not allow him to travel to Long Island where Ms. Martinez lives, the "continued separation led to a lack of trust" in the relationship.

The Affirmation also states that Defendant had lost his phone and came to her home to borrow their son's phone.  She thought he was being unfaithful.  They started arguing, and she started swinging at him.  The Affirmation elaborates on the Incident, stating that "he put his hand

over [her] mouth . . . to try to stop [her] from yelling." "His hand was not over [her] mouth for

more than a few seconds, and at no time did it affect [her] ability to breathe," and she does not

"know exactly how [the bracelets] were broken, but [her] best guess is that it was while

[Defendant] was holding [her] arms and [she] was trying to break free." "Later, when I read the

report again in a calmer state of mind, I realized that some of the statements were not accurate.

Specifically, the statements that 'I wanted him to leave,' that he 'ripped' the bracelets off of my

arm, and that he covered my mouth and nose with his hand are not accurate . . . . I don't want

him to go to prison."

## II.    LEGAL STANDARD

"The court may… revoke a term of supervised release . . ., if the court . . . finds by a

preponderance of the evidence that the defendant violated a condition of supervised release." 18

U.S.C. § 3583(e)(3). The Government bears the burden of proving a violation of supervised

release by a preponderance of the evidence. *United States v. Howard*, 737 F. App'x 35, 37 (2d

Cir. 2018) (summary order); *see also Johnson v. United States*, 529 U.S. 694, 700 (2000).

## III.    DISCUSSION

The Government alleges that Defendant violated the conditions of his supervised release

as set forth in eight Specifications. The four disputed Specifications are that Defendant (1)

committed a state crime of robbery in the third degree in violation of N.Y.S. Penal Code §

160.05, a class D felony; (2) committed a state crime of mischief in the third degree in violation

of N.Y.S. Penal Code § 145.05 02, a class E felony; (3) committed a state crime of criminal

obstruction of breathing in violation of N.Y.S. Penal Code § 121.11(b), a class A misdemeanor;

and (8) committed a state crime of assault in the third degree in violation of N.Y.S. Penal Code §

120.00, a class A misdemeanor.

4

### a. Specification 1

Specification 1 is dismissed because the evidence does not satisfy the elements of the underlying crime on which the specification is based.  Under New York law, a person commits robbery in the third degree if he "forcibly steals property."  N.Y.S. Penal Code § 160.05.  A person "forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of : (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."  N.Y.S. Penal Code § 160.00.

While Ms. Martinez's Supporting Deposition states that Defendant "took [her] phone," the evidence does not support that he used force to take the phone or compelled her to deliver the property to him.  They were not arguing about the phone, and the phone was not on her person.  Even though Defendant apparently used physical force "upon" Ms. Martinez, the Government has not shown by a preponderance of the evidence that he used force to take the phone.

Specification 1 is dismissed for the additional reason that the evidence is insufficient to show that Defendant sought permanently to deprive Ms. Martinez of her phone.  The Affirmation states that Mr. Morales visited the residence to borrow their son's phone, as he had done previously.  Even though he ended up taking Ms. Martinez's phone, he eventually gave the phone to his friend to return to Ms. Martinez's mother later that night.  Larceny, which is an element of the underlying crime of robbery in the third degree, is the "intent to deprive" another of property or "appropriate" property, both of which require withholding the property "permanently or for so extended a period or under such circumstances that the major portion of

its economic value or benefit is lost to him." N.Y.S. Penal Code § 155.00(3)-(4) (defining "Deprive" and "Appropriate"). The Government has failed to show by a preponderance of the evidence that Defendant took the phone with the intent to keep it permanently or until it lost its value. Specification 1 is dismissed.

### b. Specification 2

Specification 2 is dismissed because the evidence does not satisfy the elements of the underlying crime on which Specification 2 is based. A person commits criminal mischief in the third degree when, "with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he or she has such right he . . . damages property of another person in an amount exceeding two hundred fifty dollars." N.Y.S. Penal Code § 145.05.

The Government has not shown by a preponderance of the evidence that Defendant acted "with intent to damage" the bracelets. While both the Incident Report and the Supporting Deposition state that Defendant "ripped" the bracelets off of Ms. Martinez in a violent altercation, the bracelets easily could have been broken -- even accepting that he "ripped" the bracelets off -- without the intent to damage them. That conclusion is supported by Ms. Martinez's later explanation that the bracelets likely were broken during the fight while she was trying to break free. Specification 2 is dismissed.

### c. Specification 3

Specification 3 is accepted because the Government has shown by a preponderance of the evidence the elements of the crime underlying the specification. N.Y.S. Penal Code § 121.11(b) states: "A person is guilty of criminal obstruction of breathing or blood circulation when, with intent to impede the normal breathing or circulation of the blood of another person, he or she . . . blocks the nose or mouth of such person."

While Defendant admits that he placed his hand over Ms. Martinez's mouth, he argues that he did not have the requisite intent -- asserting that he covered her mouth to stop her from yelling and not to impede her breathing.  The preponderance of the evidence is contrary to Defendant's argument.  On the 911 call, Ms. Martinez stated twice that Defendant put his hand over her mouth, emphasizing in the second instance that he did so "hard."  The Domestic Incident Report and the Supporting Deposition both state that he covered her mouth and nose. When asked whether he had ever choked or strangled her, she answered yes.  These statements immediately after the Incident are more credible than her alternative explanations in the Affidavit.  Specification 3 is accepted.

### d.  Specification 8

Specification 8 is accepted because a preponderance of the evidence supports the underlying state crime of assault in the third degree in violation of N.Y.S. Penal Code § 120.00. A person is guilty of assault in the third degree if he causes physical injury to another "recklessly" or "with the intent to cause the physical injury."  N.Y.S. Penal Code § 120.00. Sufficient evidence supports the conclusion that Defendant injured Ms. Martinez, and that he did so at least recklessly, if not intentionally.  She repeatedly stated that he "bit her," and the Photographs show a large bite mark and other bruises.  Specification 8 is affirmed.

## IV.    CONCLUSION

For the foregoing reasons, the Court dismisses Specifications 1 and 2, and finds that Defendant has violated the conditions of his supervised release as set forth in Specifications 3 and 8.  At the hearing scheduled for May 16, 2022, the Court will address the remaining Specifications 4 through 7.

Dated: May 4, 2022
      New York, NY

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE